IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

4U Promotions, Inc.,            :

    Plaintiff,               :

 v.                              :       Case No. 2:15-cv-1673
                                                  Magistrate Judge King
                                         :
Excellence in Travel, LLC,

    Defendant.              :

**OPINION AND ORDER**

This matter is before the Court, with the consent of the parties under 28 U.S.C. § 636(c), on the motion of Defendants requesting interpretation of the liquidated damages provision contained in the settlement agreement resolving the claims in this case. Motion Requesting Interpretation of Liquidated Damages Provision (Doc. 75, redacted; Doc. 81, unredacted). Plaintiff 4U Promotions, Inc., has responded and the motion has been fully briefed. The Court resolves this motion as follows.

Background

Briefly, Plaintiff 4U Promotions, Inc. ("4UP") filed this action under the Lanham Act, 15 U.S.C. 1125, alleging that Defendants, Excellence in Travel, LLC's ("EIT") and Colleen Gaier ("Ms. Gaier") (collectively, "Defendants"), infringed 4UP's registered trademarks. 4UP also asserted supplemental state law claims of breach of contract, contempt under O.R.C. § 2705.01 *et seq.*, and violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq.*

2

The breach of contract claim arose out of the settlement of a prior state court action filed by 4UP against EIT in the Court of Common Pleas for Greene County, Ohio, asserting claims for breach of contract, unfair competition, intentional interference with business relationships and conversion. EIT filed a counterclaim alleging claims for breach of fiduciary duty, breach of joint venture, conversion, interference with prospective contractual relations, defamation, false light invasion of privacy and seeking declaratory judgment regarding the ownership and validity of certain service marks. The focus of the state court action was a joint venture to organize and promote a specialty cruise in 2012 that 4UP and EIT called the "Decades of Rock & Roll Oldies Cruise." That action involved the use of two marks: (1) "Decades of Rock and Roll Oldies Cruise" and (2) "Decades of Rock and Roll" (the "4UP marks"). The state court action was mediated and the parties entered into a settlement agreement. Not quite a year later, 4UP filed this action.

## Facts

Following mediation of this case, the parties entered into a settlement agreement on April 25, 2016, and the action was dismissed upon stipulation. Stipulated Dismissal (Doc. 44). On December 28, 2016, 4UP moved to enforce the parties' settlement agreement. Plaintiff's Motion for Enforcement of the Parties' Settlement Agreement (Doc. 45, redacted; Doc. 50, unredacted). As it relates to the motion to enforce the settlement agreement and to Defendants' current motion, the settlement agreement contains the following provisions:

> 3. <u>EIT's and Gaier's Cessation of Use of the 4UP Mark</u>. Within fourteen (14) days after the Execution Date, EIT and Gaier shall completely cease all uses of the 4UP Mark and any substantially similar variation of the 4UP Mark.

3

> EIT and Gaier expressly agree that ceasing all uses includes, but is not limited to, removing each previous and/or current use of the 4UP Mark from all print media, electronic media and social media over which 4UP and/or Gaier have direct or indirect control through EIT's and Gaier's employees and/or agents. EIT and Gaier further expressly agree that "uses of the 4UP Mark" include any use of the 4UP Mark or any substantially similar variation of the 4UP Mark as a hashtag, a metatag, metadata of any sort and/or in any way whatsoever, regardless of whether it is used as a trademark or not.
>
> If EIT or Gaier fail to comply with this Section and that failure continues for fourteen (14) days after written notice is provided as set forth in Section 9, below, then 4UP may take all available action at law. No action can be taken prior to the expiration of this notice requirement. The Parties agree that this Section 3 is a material provision of this Agreement.
>
> \*\*\*
>
> 5. <u>Liquidated Damages</u>. EIT and Gaier acknowledge that any material breach of this Agreement will cause 4UP damages that are impossible to compute and ascertain with certainty as a basis for recovery by 4UP of actual damages, and that liquidated damages represent a fair, reasonable and appropriate estimate thereof. Accordingly, in lieu of actual damages for such breach, EIT and Gaier agree that liquidated [sic] may be assessed and recovered by 4UP in the amount of ten thousand Dollars ($10,000.00).

On May 2, 2016, *i.e.*, one week prior to the expiration of the initial fourteen-day period, counsel for 4UP sent an email to Defendants' counsel identifying uses of the 4UP mark. *See* Affidavit of Colleen Gaier, Doc. 94, Ex. 2. On May 10, 2016, *i.e.,* one day after the expiration of that initial period, counsel for 4UP sent a first written notice of noncompliance with the settlement agreement. *Id*. at Ex. 3. This notice

4

purported to identify 2 confirmed and 4 unconfirmed uses of the 4UP mark. *Id*. These uses had been identified by 4UP in the email dated May 2. The next day, counsel for 4UP emailed Defendants' counsel highlighting three items identified in the prior day's letter that still needed to be corrected. *Id*. at Ex. 4.

On May 16, 2016, Defendants' counsel responded to 4UP's counsel stating that her client had complied in response to the May 10 written notice. *Id*. at Ex. 5. On that same date, 4UP's counsel sent a second notice of noncompliance identifying 9 Facebook posts and 4 tweets, all dating from 2011, and demanding removal of those items. *Id*. at Ex. 6. There is no indication in this letter that these items had been included in the first letter notification of noncompliance. On May 31, 2016, Defendants' counsel emailed 4UP's counsel, representing that the posts had been removed. *Id*. at Ex. 7. On August 1, 2016, 4UP's counsel sent a third notice of noncompliance. *Id*. at Ex.8. Again, there is no indication in this letter that these items had been included in the first or second letter notifications of noncompliance. The third letter also requested payment of $10,000 for the alleged material breach of the settlement agreement. By letter dated August 15, 2016, Defendants' counsel responded to 4UP stating that her clients had complied with the terms of the settlement agreement. *Id*. at Ex. 10.

4UP filed its motion to enforce the settlement agreement approximately four months later. The motion identifies alleged uses consisting of four Facebook posts and sixteen tweets discovered on or around December 9, 2016. *See* Affidavit of Penny Greene, Doc. 50 Attachments B and D. The motion also asserts that Defendants had previously confirmed removal of three of these tweets and one of these Facebook posts. *Id*.

## Analysis

Defendants explain that they are seeking an interpretation of the liquidated damages provision of the settlement agreement in an effort to resolve the motion to enforce the settlement agreement prior to any hearing on 4UP's motion. Defendants request that the Court consider two issues: (1) whether the liquidated damages clause in the settlement agreement is enforceable, and (2) whether the liquidated damages provision limits recovery to $10,000 or whether it allows for a cumulative recovery of $10,000 for each alleged continuing use. The Court will address each issue in turn.

### A. Is the Liquidated Damages Clause a Penalty?

Defendants contend that the liquidated damages clause is an unenforceable penalty. 4UP disagrees.

"'Whether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case[.]'" *Heskett Ins. Agency, Inc. v. Braunlin,* 2011 WL 5903484, at *6 (Ohio 4th Dist. Nov. 16, 2011), quoting *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 28 (1984). "If a party challenges a stipulated damages provision, 'the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach.'" *Id.*, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St. 376, 382 (1993). "'If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced.'" *Id.,* citing 3 Restatement of the Law 2d, Contracts (1981) 157, Section 356(1).

The Ohio Supreme Court addressed at length the substantive law on liquidated damages in *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 453 (2016), explaining that, "[s]imply stated, liquidated damages are damages that the parties to a contract agree upon, or stipulate to, as the actual damages that will result from a future breach of the contract." *Id.*, citing *Sheffield-King Milling Co. v. Domestic Science Baking Co.,* 95 Ohio St. 180, 183 (1917). The purpose of a liquidated damages clause is "to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevents [sic] a controversy between the parties as to the amount of damages." *Id.* (internal quotations omitted). The stipulated amount "forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less." *Id.* (internal quotations omitted). "Put another way, 'a liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach.'" *Id.*, quoting *Carrothers Constr. Co., L.L.C. v. S. Hutchinson,* 288 Kan. 743, 754, 207 P.3d 231 (2009).

Although liquidated damages clauses were once disfavored, that is no longer the case. *Boone*, at 453. Rather, such clauses are enforced when found to be "fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract." *Id.* at 453-454 (internal quotations omitted). They are generally viewed with favor when they are found to have been "deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights." *Id.* at 454, quoting *Wise v. United States,* 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919). Significant to such a finding would be the "sophistication of the parties and whether both

7

sides were represented by able counsel who negotiated the contract at arms-length without the ability to overreach the other side." *Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.,* 893 F.Supp. 215, 218 (S.D.N.Y. 1995).

The *Boone* court noted that Ohio has long recognized liquidated-damages provisions as valid and enforceable so long as the provisions are not tantamount to penalties. *Id*. at 454. That is the issue that Defendants raise here. With respect to this issue, the parties agree that, whether a contract provides for liquidated damages or an unenforceable penalty is a question of law. *See Lake Ridge Academy* 66 Ohio St. at 380. In *Boone*, the Ohio Supreme Court cited with approval an Ohio appellate court's description of a prohibited "penalty":

> "a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. A penalty is an agreement to pay a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, *while the essence of liquidated damages is a genuine covenanted pre-estimate of damages.* The amount is fixed and is not subject to change; however, if the stipulated sum is deemed to be a penalty, it is not enforceable and the nondefaulting party is left to the recovery of such actual damages as he can prove."
>
> (Emphasis sic). *Piper v. Stewart & Inlow,* 5th Dist. Licking No. CA-2530, 1978 WL 217430, *1 (June 14, 1978), quoting 22 American Jurisprudence 2d, Damages, Section 213, at 298 (1965).

*Id*. at 454-55.

The Ohio Supreme Court has established the following test to determine whether a liquidated damages provision in a contract should be construed as a penalty:

> Where the parties have agreed on the amount of
> damages, ascertained by estimation and adjustment, and
> have expressed this agreement in clear and unambiguous
> terms, the amount so fixed should be treated as
> liquidated damages and not as a penalty, if the
> damages would be (1) uncertain as to amount and
> difficult of proof, and if (2) the contract as a whole
> is not so manifestly unconscionable, unreasonable, and
> disproportionate in amount as to justify the
> conclusion that it does not express the true intention
> of the parties, and if (3) the contract is consistent
> with the conclusion that it was the intention of the
> parties that damages in the amount stated should
> follow the breach thereof.

*Samson Sales, Inc.,* 12 Ohio St.3d 27 at syllabus; *see also Jones v. Stevens*, 112 Ohio St. 43 (1925) at syllabus; *Lake Ridge Academy,* 66 Ohio St.3d at 382.

Applying these principles and standards to the circumstances presently before the Court, the Court concludes that the liquidated damages clause is not a penalty. First, the Court is satisfied that damages would be uncertain or difficult to prove. Defendants contend, without any discussion or analysis, that 4UP's actual damages, if any, are easily provable and would include damages ordinarily proven in a trademark infringement case, *i.e.*, profits realized by EIT or profits lost to 4UP by reason of Defendants' claimed use of the 4UP mark. 4UP, on the other hand, suggests a number of reasons why damages cannot easily be proven in this case.

The Court has no trouble accepting that damages in Lanham Act cases frequently are difficult to prove. In fact, the statute itself accounts for this difficulty. As Judge Graham explained in *Coach, Inc. v. Cellular Planet*, 2010 WL 2572113 (S.D. Ohio June 22, 2010):

> The Lanham Act authorizes an award of statutory
> damages in lieu of actual damages. *See also Cable/Home
> Communication Corp. v. Network Prods., Inc.,* 902 F.2d
> 829, 850 (11th Cir. 1990) ("Generally, statutory

> damages are awarded when no actual damages are proven, or actual damages and profits are difficult and impossible to calculate"). Statutory damages for trademark infringement are available for up to $200,000 per trademark infringed, regardless of willfulness, and enhanced up to $2,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117(c). The amount of statutory damages awarded to a plaintiff within the range provided does not depend on actual damages. In fact, as recognized by this Court, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft v. McGee,* 490 F.Supp.2d at 882. *See also Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332 (9th Cir. 1990) (statutory damages appropriate regardless of proof of actual damages or defendant's profits); *Microsoft Corp. v. Tierra Computer, Inc.,* 184 F.Supp.2d 1329, 1333 (N.D. Ga. 2001) (rejecting defendant's argument that plaintiff must prove actual damages before it can recover statutory damages).

*Id*. at *2. The language of the parties' liquidated damages clause recognizes the potential impossibility of computing damages and, in this way, is consistent with the statute itself. Consequently, the first prong of the *Samson* test weighs in favor of concluding that the clause is not a penalty.

Further, looking at the contract as a whole, there is no basis on which to conclude that the settlement agreement is so unconscionable, unreasonable, and disproportionate that it does not express the parties' intentions. The clause is not a boiler plate liquidated damages provision; rather, it was freely negotiated by parties represented by counsel and possessing equal bargaining power. Moreover, the parties – one-time business partners – cannot fairly be characterized as unsophisticated. Consequently, the second prong of the *Samson*

10

test weighs in favor of concluding that the clause is not a penalty.

Finally, the contract is consistent with the conclusion that the parties intended damages in the amount stated. As explained above, the parties had a long history of litigation, including the previous settlement of a state court action. This history suggests that the $10,000 amount was intended to reflect an agreed upon estimation of damages in the event of a breach. The language of the liquidated damages provision is clear with respect to the reasons supporting the parties' choice of this amount. Consequently, the third prong of the *Samson* test weighs in favor of concluding that the clause is not a penalty.

This Court therefore concludes that the liquidated damages clause of the parties' settlement agreement is not a penalty.

B. Is Recovery Limited to $10,000?

The parties devote much of their briefing to the language of the liquidated damages clause, and both sides contend that the language of the clause is unambiguous. Defendants argue that the language is unambiguous and limits recovery to $10,000 for "any" material breach. 4UP, on the other hand, argues that the language is unambiguous and allows for a $10,000 recovery for "every" material breach or "all" material breaches. The Court notes that Defendants' use of the word "any" is consistent with the language of the settlement agreement itself. In a footnote, 4UP explains that it chooses to frame the issue in terms of "every" and "all" in order to "allow[] for a more generalized interpretation." *See* Response, Doc. 88 at n.10. The Court is not convinced that the parties' word choice in this regard is of any consequence.

This is so because, in making their arguments, the parties have failed to meaningfully address the particular conduct that constitutes a "material breach" under the terms of their

agreement.  Defendants do not address the issue at all and 4UP's
arguments suggest that it considers a breach to be Defendants'
use of a 4UP mark.  The parties' unarticulated but clearly
differing views of what conduct constitutes a "material breach"
underlie their current disagreement.  Because the Court
considers the definition of "material breach" central to any
interpretation of the liquidated damages clause urged by the
parties, it will turn first to the controlling provision of the
settlement agreement addressed to that issue.

As noted *supra*, Section 3 of the settlement agreement sets
forth Defendants' obligations.  This section is captioned,
"<u>EIT's and Gaier's Cessation of the Use of the 4UP Mark</u>."  The
language of the first paragraph in this section requires that,
"[w]ithin fourteen (14) days after the Execution date, EIT and
Gaier shall completely cease all use of the 4UP Mark and any
substantially similar variation of the 4UP Mark. . . . [C]easing
all uses includes, but is not limited to, removing each previous
and/or current use of the 4UP Mark. . . ."  The language of the
second paragraph in this section states that, "[i]f EIT or Gaier
fail to comply with this Section and that failure continues for
fourteen (14) days after written notice is provided,. . . then
4UP may take all available action at law."  Finally, the last
sentence of the section states that the parties agree that the
section is a "material provision."

The Court's analysis of this provision requires a short
discussion of the applicable rules of interpretation.  There is
no question that a settlement agreement is a binding contract.
*Edwards v. Hocking Valley Community Hosp.*, 87 Fed.Appx. 542, 550
(6th Cir. 2004).  According to the terms of the parties'
settlement agreement, the provision is to be construed in
accordance with Ohio law.  The application of Ohio law is

consistent with choice of law provisions and the parties do not contend that any law but Ohio's governs their dispute.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012). "'When confronted with an issue of contract interpretation, [a court's] role is to give effect to the intent of the parties.'" *Eastham v. Chesapeake Appalachia*, *L.L.C.,* 754 F.3d 356, 361 (6th Cir. 2014), quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.,* 129 Ohio St.3d 397, 953 N.E.2d 285, 292 (2011). Courts typically presume that the parties' intent is contained within the language of the contract. *Id.* Courts also look to "the plain and ordinary meaning of the language used in the contracts unless another meaning is clearly apparent from the contents of the agreement." *Id*. However, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id*.

"[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 763 (6th Cir. 2008) (applying Ohio law). Where ambiguity exists, interpretation of the parties' intent is a question of fact. *Schafer v. Soderberg & Schafer,* 196 Ohio App.3d 458, 477 (Ohio 6th Dist. 2011).

Applying these principles to the parties' settlement agreement, the plain language of Section 3 requires Defendants, first, to cease all use of the 4UP mark within 14 days of the execution of the settlement agreement and, thereafter, to cease such use within 14 days after receipt of any further written notice of offending use. This language does not define a breach

13

of the settlement agreement in terms of Defendants' use of the 4UP mark; rather, a "material breach" occurs if Defendants fail to remove offending use or uses within 14 days after 4UP notifies Defendants, in writing, of improper use. Simply stated, a "material breach" under the settlement agreement is the *failure* to remove the offending use or uses, either initially or upon later written notification.

This definition makes the interpretation of the liquidated damages clause very straightforward. That is, construing Section 5 in a way that is consistent with the language of Section 3, any failure by Defendants to take removal action within the prescribed timeframe following written notification will result in damages to 4UP in the agreed upon amount of $10,000.

Presumably, more than one scenario may result in the assessment and recovery of liquidated damages. For example, the failure to remove all offending uses within 14 days of the execution of the settlement agreement could result in the assessment and recovery of $10,000. Similarly, even if all known uses are initially removed, if at some later time additional uses are discovered and written notice of such use is provided, Defendants' failure to remove such additional uses within 14 days of that notice may result in the assessment of $10,000.[1] Of course, it goes without saying that, although a valid stipulated amount of liquidated damages becomes the measure of recovery, see *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.*, 109 Ohio App.3d 312 (Ohio 12th Dist. 1996), any such recovery will require 4UP to prove by a

---

[1] Defendants' motion does not raise, and the parties do not address, the issue of what conduct constitutes the removal of a use under the terms of the settlement agreement. Consequently, the Court will not consider that particular issue within the context of ruling on the current motion.

preponderance of the evidence an alleged breach of the settlement agreement.

Both parties are correct in arguing that the language of the liquidated damages clause is not ambiguous as it relates to the issue raised by Defendants' motion.  Moreover, the parties' interpretations of the liquidated damages clause do not necessarily stand in direct contradiction.  That is, Defendants are correct that recovery for each material breach is limited to $10,000 and 4UP is correct that it is entitled to $10,000 for each material breach proven by it.  However, because a material breach is defined under the terms of the settlement agreement as Defendants' failure to remove their uses of the 4UP mark upon notice – rather than as their actual uses of the 4UP mark – the settlement agreement does not contemplate 4UP's recovery of $10,000 for each alleged use of its mark.

<u>Conclusion</u>

Based on the foregoing, the Court **GRANTS** Defendants' Motion Requesting Interpretation of Liquidated Damages Provision (Doc. 75, redacted; Doc. 81, unredacted) but **CONCLUDES** that the liquidated damages clause of the parties' settlement agreement is enforceable.  Further, the Court interprets the language of the liquidated damages provision of the parties' settlement agreement to entitle 4UP to the recovery of $10,000 for each material breach proven by it.  However, Section 3 of the settlement agreement defines material breach as Defendants' *failure to remove* a use or uses of 4UP's mark, either initially or upon written notice, within the relevant prescribed timeframe.

August 9, 2017  *s/ Norah McCann King*
United States Magistrate Judge