IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

4U Promotions, Inc.,          :

    Plaintiff,            :

  v.                          :           Case No. 2:15-cv-1673
                                          Magistrate Judge King
                              :
Excellence in Travel, LLC,

    Defendant.            :


**OPINION AND ORDER**

This matter is before the Court, with the consent of the parties under 28 U.S.C. § 636(c), on Plaintiff's second motion for partial summary judgment, (Doc. 80, redacted; Doc. 86, unredacted). Defendants have responded and the motion has been fully briefed. For the following reasons, the motion for partial summary judgment is **DENIED**.

Background

Briefly, Plaintiff 4U Promotions, Inc. ("4UP") filed this action under the Lanham Act, 15 U.S.C. 1125, alleging that Defendants, Excellence in Travel, LLC's ("EIT") and its owner and sole member, Colleen Gaier ("Ms. Gaier") (collectively, "Defendants"), infringed 4UP's registered trademarks. 4UP also asserted supplemental state law claims of breach of contract, contempt under O.R.C. § 2705.01 *et seq.*, and violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq*.

The breach of contract claim arose out of the settlement of a prior state court action filed by 4UP against EIT in the Court of Common Pleas for Greene County, Ohio, asserting claims for

2

breach of contract, unfair competition, intentional interference with business relationships and conversion. EIT filed a counterclaim alleging claims for breach of fiduciary duty, breach of joint venture, conversion, interference with prospective contractual relations, defamation, false light invasion of privacy and seeking declaratory judgment regarding the ownership and validity of certain service marks. The focus of the state court action was a joint venture to organize and promote a specialty cruise in 2012 that 4UP and EIT called the "Decades of Rock & Roll Oldies Cruise." That action involved the use of two marks: (1) "Decades of Rock and Roll Oldies Cruise" and (2) "Decades of Rock and Roll" (the "4UP marks"). The state court action was mediated and the parties entered into a settlement agreement. Not quite a year later, 4UP filed this action.

## Facts

Following mediation of this case, the parties entered into a settlement agreement on April 25, 2016, and the action was dismissed upon stipulation. Stipulated Dismissal (Doc. 44). On December 28, 2016, 4UP moved to enforce the parties' settlement agreement. Plaintiff's Motion for Enforcement of the Parties' Settlement Agreement (Doc. 45, redacted; Doc. 50, unredacted). As it relates to the motion to enforce the settlement agreement and to Defendants' current motion, the settlement agreement contains the following provision:

> 3. <u>EIT's and Gaier's Cessation of Use of the 4UP Mark</u>. Within fourteen (14) days after the Execution Date, EIT and Gaier shall completely cease all uses of the 4UP Mark and any substantially similar variation of the 4UP Mark. EIT and Gaier expressly agree that ceasing all uses includes, but is not limited to, removing each previous and/or current use of the 4UP Mark from all print media, electronic media and social media over which 4UP and/or Gaier have direct or

> indirect control through EIT's and Gaier's
> employees and/or agents. EIT and Gaier further
> expressly agree that "uses of the 4UP Mark"
> include any use of the 4UP Mark or any
> substantially similar variation of the 4UP Mark
> as a hashtag, a metatag, metadata of any sort
> and/or in any way whatsoever, regardless of
> whether it is used as a trademark or not.
>
> If EIT or Gaier fail to comply with this Section
> and that failure continues for fourteen (14) days
> after written notice is provided as set forth in
> Section 9, below, then 4UP may take all available
> action at law. No action can be taken prior to
> the expiration of this notice requirement. The
> Parties agree that this Section 3 is a material
> provision of this Agreement.

On May 2, 2016, *i.e.*, one week prior to the expiration of the initial fourteen-day period, counsel for 4UP sent an email to Defendants' counsel identifying uses of the 4UP mark. *See* Declaration of Colleen Gaier (Doc. 93, Ex. 2). On May 10, 2016, *i.e.,* one day after the expiration of that initial period, counsel for 4UP sent a first written notice of noncompliance with the settlement agreement. *Id*. (Doc. 93, Ex. 3). This notice purported to identify 2 confirmed and 4 unconfirmed uses of the 4UP mark. *Id*. These uses had been identified by 4UP in the email dated May 2. The next day, counsel for 4UP emailed Defendants' counsel highlighting three items identified in the prior day's letter that still needed to be corrected. *Id*. (Doc. 93, Ex. 4).

On May 16, 2016, Defendants' counsel responded to 4UP's counsel stating that her client had complied in response to the May 10 written notice. *Id*. (Doc. 93, Ex. 5). On that same date, 4UP's counsel sent a second notice of noncompliance identifying 9 Facebook posts and 4 tweets, all dating from 2011, and demanding removal of those items. *Id*. (Doc. 93, Ex. 6). There is no indication in this letter that these items had been

4

included in the first letter notification of noncompliance. On May 31, 2016, Defendants' counsel emailed 4UP's counsel, representing that the posts had been removed. *Id*. (Doc. 93, Ex. 7). On August 1, 2016, 4UP's counsel sent a third notice of noncompliance. *Id*. (Doc. 93, Ex.8). Again, there is no indication in this letter that these items had been included in the first or second letter notifications of noncompliance. The third letter also requested payment of $10,000 for the alleged material breach of the settlement agreement. By letter dated August 15, 2016, Defendants' counsel responded to 4UP stating that her clients had complied with the terms of the settlement agreement. *Id*. (Doc. 93, Ex. 10).

4UP filed its motion to enforce the settlement agreement approximately four months later. The motion identifies alleged uses consisting of four Facebook posts and sixteen tweets discovered on or around December 9, 2016. *See* Affidavit of Penny Greene (Doc. 50, Attachments B and D). The motion also asserts that Defendants had previously confirmed removal of three of these tweets and one of these Facebook posts. *Id*. 4UP now moves for partial summary judgment, contending that no genuine issue of material fact exists as to whether Defendants acted in breach of the settlement agreement by their failure to timely remove 16 tweets containing the 4UP mark.

## Legal Standard

Summary judgment is appropriate if the record establishes that there exists no genuine issue of material fact. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.

5

*Anderson*, 477 U.S. at 251. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Analysis

There is no question that a settlement agreement is a binding contract. *Edwards v. Hocking Valley Community Hosp.*, 87 Fed.Appx. 542, 550 (6th Cir. 2004). According to the terms of the parties' settlement agreement, the provision is to be construed in accordance with Ohio law. The application of Ohio law is consistent with choice of law provisions and the parties do not contend that any law but Ohio's governs their dispute. "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

In its motion for partial summary judgment, 4UP contends that Defendants acted in breach of the settlement agreement by their failure to timely remove 16 tweets containing the 4UP mark. This alleged material breach, 4UP also argues, entitles it to injunctive relief under the terms of the settlement agreement. In support of this position, 4UP relies on the affidavit of Ms. Greene, its president, submitted in connection with its motion to enforce. *See* Motion to Enforce Settlement Agreement (Doc. 50). According to Ms. Greene, she checked EIT's Twitter posts in December 2016 for any use of the 4UP mark, and discovered that EIT was using the 4UP mark in 16 tweets. *Id*. (Doc. 50, ¶¶ 9-10). She reviewed 4UP's second notice of noncompliance, dated May 16, 2016, and noted that three of those 16 tweets had been previously reported to Defendants, who represented in their May 31, 2016, email that the tweets had been deleted. *Id*. (Doc. 50, ¶11).

6

Defendants respond that 4UP is not entitled to partial summary judgment because there exist genuine issues of material fact, including (1) whether 4UP provided the required notice under the terms of the settlement agreement, and (2) whether Defendants acted in material breach of the settlement agreement with respect to the 16 tweets. Memorandum in Opposition to Plaintiff's 2nd Motion for Partial Summary Judgment against Defendants and, in the Alternative, Motion for Extension of Time in Which to File Opposition (Doc. 89, redacted; Doc. 93, unredacted)("Memorandum in Opposition"). With respect to the issue of notice, Defendants contend that 4UP notified them of only four tweets in its May 16, 2016, notice. After receipt of that notice, Defendants explain, Ms. Gaier conducted a search and found no tweets that had not already been removed by her and, on May 31, 2016, notified 4UP of these actions. Declaration of Colleen Gaier (Doc. 93, Ex. A, ¶¶ 4(g), 17, 18). According to Defendants, 4UP did not alert them to the existence of any additional tweets until the filing of the motion to enforce the settlement agreement. Upon receipt of the motion to enforce the settlement agreement, Ms. Gaier conducted a new search of the EIT Twitter account. *Id*. (Doc. 93, Ex. A, ¶31). This search uncovered 13 tweets dated from June 30, 2011 to November 29, 2011, containing the 4UP mark. *Id*. However, these tweets had not appeared in her previous searches. She deleted them at that time. *Id*.

Defendants state that, of the 16 tweets at issue here, 4UP provided them prior written notice with respect to only three. They argue that they satisfied their obligations under the settlement agreement when they searched for and removed each discovered use of the 4UP mark on Twitter and then removed all uses of the 4UP mark on Twitter as brought to their attention by 4UP. In Defendants' view, there is a factual issue as to

7

whether 4UP performed its contractual obligations required by the settlement agreement in order to prevail on a breach of contract claim.

In reply, 4UP asserts that it complied with its notice obligations under the settlement agreement. According to 4UP, the settlement agreement does not specify the particular form or content of the required notice, but requires only that the notice indicate Defendants' failure to comply with §3 of the settlement agreement. 4UP argues that, consistent with the agreement's plain language, it provided clear, written notice of Defendants' noncompliance and it was not required to identify every specific instance of such noncompliance. 4UP also characterizes Ms. Gaier's declaration as insufficient to raise a genuine issue of material fact as to whether Defendants complied with their obligation to cease using the 4UP mark by removing the tweets. In 4UP's view, Ms. Gaier addresses only her attempts to comply with the settlement agreement; she has not established actual compliance.

4UP appears to take the position that its alleged discovery of 16 tweets conclusively establishes that Defendants did not remove those tweets. Significantly, the parties do not address the definition of the term "removing" as set forth in the settlement agreement. 4UP appears to define Defendants' obligation in "removing each previous and/or current use" as akin to Defendants' guarantee that, once removed, a tweet will never reappear in any subsequent search. Defendants, on the other hand, appear to focus on the actual physical act of deleting a tweet, when uncovered through their own search or when identified by 4UP, as sufficient to satisfy their obligation. The Court previously addressed with the parties its need to understand the technology relating to the effective removal of social media posts. For purposes of the current

8

motion, the Court has no information from which it can conclude that if, as 4UP contends, 16 tweets continued to exist in violation of the settlement agreement, that existence was the result of Defendants' deliberate failure to remove the tweets. 4UP, as the party who bears the burden of proof on this issue, simply has not established on this record that the mere existence of a tweet necessarily resulted from Defendants' deliberate failure to remove that tweet.

In short, and construing the facts in the light most favorable to Defendants, as it must, the Court concludes that Ms. Gaier has presented evidence in support of her contention that she removed all tweets either located by her or identified by 4UP. At this stage, that is all that is required of Defendants in order to raise a genuine issue of material fact sufficient to defeat 4UP's motion for partial summary judgment.

In light of the foregoing, the Court need not and will not address the issue of the sufficiency of 4UP's notice.

## Conclusion

Based on the foregoing, the second motion for partial summary judgment (Doc. 80 redacted; Doc. 86 unredacted) is **DENIED**.

August 10, 2017                     *s/ Norah McCann King*
                                    United States Magistrate Judge